1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ANDREW FURIA,                          No. 2:19-cv-942-JAM-KJN (PS)

12              Plaintiff,                   FINDINGS AND RECOMMENDATIONS ON
                                            PLAINTIFF'S MOTION FOR DEFAULT
13        v.
                                            (ECF No. 113)
14   SUSANNE MARIE MCGREW, et al.,

15              Defendants.

16

17        Presently pending before the court is plaintiff and counter-defendant Andrew Furia's

18   motion for default judgment against defendant PurHydro, LLC.[1]  (ECF No. 113.)  To date,

19   PurHydro has not opposed Furia's motion or otherwise made an appearance in this action.

20        The undersigned recommends Furia's motion for default judgment be GRANTED IN

21   FULL, and that Furia be awarded final judgment against PurHydro in the amount of $100,000 in

22   principal damages plus pre-judgment interest at a rate of 7 percent annum (running from April 26,

23   2019 through the date of judgment).

24   ///

25   ///

26   ///

27

28   ---
     [1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings
     and recommendations.  See 28 U.S.C. § 636(b)(1)(B).

1

1    I.    **BACKGROUND**

2        On April 10, 2019, Furia filed a complaint in California Superior Court for conversion

3    against his ex-girlfriend, defendant Susanne McGrew.  (ECF No. 1 at 6-13.)  He later amended,

4    adding multiple defendants and, among other claims, a RICO claim, 18 U.S.C. § 1962(c).  (Id. at

5    16-28.)  Therein, Furia alleged McGrew absconded with over $300,000 from Furia's bank

6    account, then conspired with her sister, Laurie Hirsch, to retain possession of the funds by

7    transferring those funds into Hirsch's account.  (Id. at ¶¶ 36, 54.)  McGrew and Hirsch then

8    allegedly transferred $100,000 of the funds by check to defendant PurHydro, LLC, which is

9    allegedly "a Nevada corporation [] owned or controlled in some part by defendants McGrew

10   and/or Hirsch."  (Id. at ¶¶ 4, 58.)  Furia seeks (among other things) a return of the funds.  (Id. at

11   27.)

12       On June 6, 2019, McGrew and Hirsch answered, and McGrew filed counterclaims against

13   Furia.  (ECF Nos. 5, 6.)  In the counterclaims, McGrew alleged the funds were the joint property

14   of her and Furia, or were in a constructive trust for her benefit.  (ECF No. 6-1.)  However, the

15   following day McGrew executed a declaration stating that her sister Hirsch "persuaded [her] to

16   withdraw the funds from Furia's [] account" without Furia's knowledge.  (ECF No. 114-2 at ¶¶ 4-

17   5.)  McGrew stated that when she and Hirsch learned Furia was attempting to freeze her accounts

18   via a Superior Court TRO, Hirsch "introduced me to Richard Byrd who [Hirsch] said was a friend

19   of her ex-boyfriend."  (Id. at ¶ 10.)  "Hirsch and I [McGrew] then transferred $100,000 to Richard

20   Byrd's company, PurHydro[.]")  (Id. at ¶ 11.)  At the end of the declaration, McGrew

21   "disclaim[ed] any interest in the $324,918.27 transferred from Furia's [] account," and that it was

22   her "desire that all of those funds be returned immediately to Furia."  (Id. at ¶ 13.)  Furia and

23   McGrew settled, and in November 2019 each stipulated to dismissing all claims against the other.

24   (ECF No. 28; see also ECF No. 114-2.)

25       In December 2019, Hirsch filed an amended answer and crossclaims for equitable

26   contribution, indemnity, fraud, negligent misrepresentation, and unjust enrichment against Furia

27   and McGrew.  (See ECF No. 56.)  Therein, Hirsch denied conspiring to convert Furia's property,

28   and contended she believed the funds were jointly owned with McGrew.  Hirsch claimed she

2

1    never received notice of Furia's request for a TRO, and the frozen accounts contained other funds

2    that were unrelated to the dispute.  (Id. at 27.)  Hirsch maintained that McGrew lied to her about

3    her authority over the funds, and that after the money was transferred into one of Hirsch's

4    accounts, McGrew "demanded that Hirsch pay her . . . her daily living expenses."  (Id. at 28.)

5    Thus, Hirsch claimed Furia and McGrew "should fully bear any liability, exposure, or judgment

6    against Hirsch that may result from this action."  (Id. at 29.)  In March 2020, Furia filed his

7    answer to Hirsch's crossclaims, denying the material allegations therein and reasserting his sole

8    claim over the funds.  (ECF No. 90.)

9        On May 19, 2020, counsel for Furia, McGrew, and Hirsch appeared at a hearing before

10   the District Judge.  (ECF No. 106.)  The district judge granted McGrew's attorneys leave to

11   withdraw, and ordered Hirsch and McGrew to file a statement concerning a missing portion of the

12   allegedly-converted funds: $100,000.[2]  (Id.)  Three days later, Hirsch responded, contending the

13   $100,000 was rightfully given to PurHydro by McGrew.  (ECF No. 108.)  Hirsch also contended

14   she has no other knowledge of PurHydro's activities, has no control over the company, and has

15   no authority to interplead the funds with the court.  (Id.)

16   <u>Procedural Posture Regarding the Motion for Default Judgment</u>

17       PurHydro, LLC did not answer or otherwise appear, despite having been served at its

18   registered agent.  (ECF No. 9.)  Furia requested the Clerk enter default against the company, and

19   on July 23, 2019, the clerk entered default against PurHydro.  (ECF No. 11.)

20       On June 5, 2020, Furia filed the instant motion for default judgment against PurHydro.

21   (ECF No. 113.)  Furia contends now that McGrew has disclaimed any interest in the funds, and

22   that Hirsch claims no control over the $100,000 transferred to PurHydro, a default judgment is

23   ripe against PurHydro.

24   ///

25

26   [2] For brevity, the undersigned has omitted discussion of certain parallel proceedings in this case
     concerning interpleader claims filed by the banks.  The end result of those proceedings was that
27   approximately $225,000 of the allegedly-converted funds were deposited with the court.  (See
     ECF Nos. 53, 120.)  On June 15, Furia and Hirsch stipulated to the release of a majority of the
28   funds that had been deposited in the court's registry.  (See ECF No. 119.)

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion.  See Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986).  In making this determination, the court considers the following factors:

1.  the possibility of prejudice to the plaintiff;
2.  the merits of plaintiff's substantive claim and the sufficiency of the complaint;
3.  the sum of money at stake in the action;
4.  the possibility of a dispute concerning material facts;
5.  whether the default was due to excusable neglect; and
6.  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Id. at 1471-72.  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992); DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").

## III.     DISCUSSION

### A. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

The undersigned finds that the weight of the Eitel factors entitles Furia to a default judgment against defendant PurHydro on his conversion claim, and recommends default judgment be entered with respect to PurHydro's liability.

4

1        1.   Furia is prejudiced by PurHydro's non-responsiveness.

2        The first Eitel factor considers whether Furia would suffer prejudice if default judgment is

3   not entered, as prejudice to a plaintiff weighs in favor of a default judgment.  See PepsiCo, 238 F.

4   Supp. 2d at 1177.  Here, because Furia served PurHydro at the address of its registered agent in

5   the summer of 2019 (see ECF Nos. 9, 114-5), and PurHydro did not enter or otherwise evince an

6   intent to defend (see ECF No. 11), Furia would be left without any other recourse against

7   PurHydro.  Accordingly, the first Eitel factors favors the entry of default judgment.

8        2.   At a minimum, Furia's conversion claim is meritorious and sufficiently pleaded.

9        The second and third factors (the merits of the substantive claims and the sufficiency of

10  the complaint) are considered in tandem, due to the relatedness of the two inquiries.  The court

11  must consider whether the allegations in the complaint are sufficient to state a claim that supports

12  the relief sought.  See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); PepsiCo, 238 F.

13  Supp. 2d at 1175.

14       Here, Furia seeks recovery under three causes of action: conversion, civil conspiracy, and

15  a RICO civil conspiracy.  (ECF No. 1 at 21-27.)  Because Furia seeks the same relief against

16  PurHydro for all three claims—a return of the $100,000 plus prejudgment interest (See ECF No.

17  116), and because the court finds the conversion claim meritorious and sufficiently pleaded, the

18  undersigned concentrates the analysis on Furia's first claim.

19       In California, "the elements of a conversion claim are:  (1) the plaintiff's ownership or

20  right to possession of the property; (2) the defendant's conversion by a wrongful act or

21  disposition of property rights; and (3) damages." Lee v. Hanley, 61 Cal. 4th 1225, 1240 (2015)

22  (citation and internal quotations omitted).  "Money can be the subject of an action for conversion

23  if a specific sum capable of identification is involved." Khachatryan v. Toyota Motor Sales,

24  U.S.A., Inc., 2008 WL 4332528, at *3 (C.D. Cal. Sept. 22, 2008)

25       Here, Furia's conversion claim has merit and is adequately stated against defendant

26  PurHydro.  In the amended complaint, plaintiff alleged he lawfully owned the $100,000, and has

27  provided ample documentation showing that he not only had a right to possess it, but that

28  defendant McGrew wrongfully deprived him of his right to the funds.  Combined with McGrew's

1   disclaimer of the funds, and the banks' tracing documents showing the wrongful $100,000

2   transfer to PurHydro (see Section A.3 below for a full description of the facts), the undersigned

3   finds Furia has alleged ample facts to indicate his conversion claim is meritorious.  See Bareika

4   Corp. Ltd. v. Wells Fargo Bank, N.A., 2018 WL 6427362, at *2 (C.D. Cal. June 6, 2018) (finding

5   plaintiff's allegations that it owned a specific sum of money that defendant wrongfully converted,

6   and that the money could be traced to defendant's bank account, to be sufficient to meet this

7   factor under the Ninth Circuit's default judgment standards).

8           3.   The sum of money in dispute

9           Under the fourth factor cited in Eitel, "the court must consider the amount of money at

10   stake in relation to the seriousness of Defendant's conduct."  PepsiCo, 238 F. Supp. 2d at 1176-

11   77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal.

12   2003).  Here, Furia seeks default in the amount of $100,000 plus prejudgment interest, a

13   substantial sum of money.  See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136,

14   1136 (S.D. Cal. 2009) (proposed award amount of $100,875.00 was "manifestly excessive under

15   existing law.")  However, the principal portion of this is the $100,000 allegedly-converted by

16   PurHydro (via defendants McGrew and Hirsch).  Further, "defendant had fair notice of this

17   litigation and an opportunity to defend [its] interests, which [it has] not done."  United States v.

18   Rivers, 2020 WL 3287368, at *2 (E.D. Cal. June 18, 2020) (finding proposed $200,000 in

19   damages, at a minimum, did not weigh against an entry of default for the third Eitel factor where

20   defendants failed to defend the action).

21           4.   The material facts are not in dispute.

22           The facts of this case are fairly straightforward—from the perspective of Furia's

23   complaint.  Furia alleges McGrew and Hirsch converted almost $325,000 from his account, and

24   the two transferred $100,000 of that amount to a Nevada corporation named PurHydro, LLC.

25   (See ECF No. 1 at 16-28.)  The Court may assume the truth of well-pleaded facts in the complaint

26   (except as to damages) following the clerk's entry of default, and thus, there is no likelihood that

27   any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

28   F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

1  as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

2  of material fact exists."); accord Philip Morris USA, 219 F.R.D. at 500; PepsiCo, 238 F. Supp. 2d

3  at 1177.

4        Additionally, now that certain parties have submitted statements about their perspective

5  on the $100,000, the undersigned is confident of Furia's right to the $100,000 transferred to

6  PurHydro.  Most notably, Furia has provided to the court a declaration from defendant McGrew,

7  signed shortly after this case was removed to this court.  (ECF No. 114-2.)  Therein, McGrew

8  stated that her sister Hirsch "persuaded [her] to withdraw the funds from Furia's [] account"

9  without Furia's knowledge.  (Id. at ¶¶ 4-5.)  McGrew stated that when she and Hirsch learned that

10 Furia was attempting to freeze McGrew's accounts via a Superior Court TRO, Hirsch "introduced

11 [McGrew] to Richard Byrd who [Hirsch] said was a friend of her ex-boyfriend."  (Id. at ¶ 10.)

12 "Hirsch and [McGrew] then transferred $100,000 to Richard Byrd's company, PurHydro[.]")  (Id.

13 at ¶ 11.)  At the end of the declaration, McGrew "disclaim[ed] any interest in the $324,918.27

14 transferred from Furia's [] account," and that it was her "desire that all of those funds be returned

15 immediately to Furia."  (Id. at ¶ 13.)  Furia and McGrew settled shortly after, and in November

16 2019, each stipulated to dismissing all claims against the other.  (ECF No. 28; see also ECF No.

17 114-2.)

18      Further, defendant Hirsch has provided the court with enough information for the

19 undersigned to determine that she holds no claim to the $100,000.  Throughout Hirsch's answer

20 and counterclaim filing (see ECF No. 56), Hirsch consistently maintains that she believed

21 McGrew had full rights to transfer the funds, and believed Furia was perpetrating a fraud by

22 obtaining TRO's to freeze her and McGrew's accounts.  (See Id.)  None of Hirsch's causes of

23 action against Furia or McGrew lay claim to the $325,000, but instead focus on Furia's alleged

24 manipulation of judicial process to freeze funds unrelated to the converted funds.  (See Id.)

25      Finally, Furia has provided the court with bank records tracing the funds from McGrew

26 and Hirsch's accounts (ECF No. 114-3 at 2-29), through the $100,000 cashier's check made out

27 to PurHydro (Id. at 30-31), and into PurHydro's account with JP Morgan Chase Bank—which is

28 currently frozen due to the Superior Court's issuance of the TRO (see ECF No. 114-4.)  None of

the intervening banks have laid claim to the $100,000, and the district court has accounted for the banks' motion for fees and costs by retaining possession of a certain portion of the funds currently in the court's registry—funds separate and apart from the $100,000.  (See ECF No. 120.)

The undersigned finds that this factor favors the entry of a default judgment.

5.   The court sees no excusable neglect.

Upon review of the record before the Court, the undersigned finds that the default was not the result of excusable neglect.  See Pepsi Co, 238 F. Supp. 2d at 1177.

PurHydro has had ample notice in this lawsuit.  Furia named the company in his amended complaint, filed in California superior court over a year ago.  (ECF No. 1 at 16-28.)  Furia served the complaint on PurHydro at its registered agent's address.  (See ECF No. 1 at 172;  No. 9.) PurHydro has not filed anything in response to Furia's filings or otherwise made an appearance in this case.  (ECF No. 11.)  Accordingly, there is no indication that PurHydro's default resulted from excusable neglect, and so this factor favors the entry of a default judgment.

6.   The policy favoring disposition on the merits is outweighed by other factors.

"Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).

Here, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

**B.  Terms of the Judgment to be Entered**

Pursuant to the above analysis, the Eitel factors weigh in favor of entering default on liability against both defendants.  Further, the principal amount of damages corresponds to the tracing documents submitted, and so $100,000 is the appropriate amount of damages for Furia's claim against PurHydro.  (See ECF Nos. 114-3 and -4.)  Finally, the undersigned takes note of Furia's request for pre-judgment interest.

8

Pre-judgment interest is a substantive part of a plaintiff's claim, and state law generally governs the award of pre-judgment interest. Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co., 513 F.3d 949, 961 (9th Cir. 2008). "State law generally governs awards of prejudgment interest in diversity actions, but federal law may apply to the calculation of prejudgment interest when a substantive claim derives from federal law alone." Oak Harbor Freight Lines, Inc. v. Sears Roebuck, & Co., 513 F.3d 949, 961 (9th Cir. 2008); see also Jadwin v. Cty. of Kern, 767 F. Supp. 2d 1069, 1095 (E.D. Cal. 2011) ("[A] 7% interest rate is appropriate . . . when a party prevails on a state law claim.").

Here, Furia's claim for conversion arises from California state common law, and so the court relies upon California's statute defining the applicable rate for pre-judgment interest. California law states:

> A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt.
>
> ***
>
> [I]nterest shall accrue at a rate equal to the weekly average one-year constant maturity United States Treasury yield, but shall not exceed 7 percent per annum.

Civ. Code § 3287(a) and (c); see also Bareika Corp., 2018 WL 6427362 at *3 ("Where recovery is based in tort, 'courts have generally applied a prejudgment interest rate of 7% per annum' under California law.") (quoting Yoo v. Arnold, 2013 WL 12335872, at *11 (C.D. Cal. Mar. 25, 2013)).

Interest on $100,000 at 7 percent annum equals $7,000, or approximately $19.18 per day. The undersigned finds this amount appropriate, and recommends interest be granted from the day the $100,000 was delivered to PurHydro—April 26, 2019, through the date of the district court's judgment. (See ECF No. 1 at 24 (" . . . the $100,000 cashier's check [] was made payable to PurHydro, LLC and deposited by that entity into its account located in JP Morgan on April 26, 2019."); see also ECF No. 114-3 at 30-31 (indicating the date on which PurHydro deposited the $100,000 cashier's check—April 26, 2019).)

1    **IV.    <u>CONCLUSION</u>**

2         Based on the reasons stated herein, the undersigned recommends that Furia be granted

3    default judgment against defendant PurHydro with respect to liability for Furia's conversion

4    claim.  Additionally, the undersigned recommends that Furia's prayer for damages be granted and

5    that Furia be awarded final judgment in the amount of $100,000 in principal damages plus pre-

6    judgment interest at a rate of 7 percent annum (running from April 26, 2019, through the date of

7    judgment).

8         Accordingly, it is HEREBY RECOMMENDED that:

9         1.   Plaintiff's Motion for Default Judgment (ECF No. 113) be GRANTED; and

10        2.   Plaintiff be awarded final judgment in the amount of $100,000, and be awarded pre-

11             judgment interest at 7 percent annum starting April 26, 2019.

12        These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

14   days after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17   shall be served on all parties and filed with the court within seven (7) days after service of the

18   objections.  The parties are advised that failure to file objections within the specified time may

19   waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th

20   Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

21   Dated:  July 10, 2020

22

23                                                    _____
     furi.942                                         KENDALL J. NEWMAN
24                                                    UNITED STATES MAGISTRATE JUDGE

25

26

27

28