1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  ANDREW FURIA,                      No.  2:19-cv-00942-JAM

12              Plaintiff,

13       v.                            **ORDER GRANTING THE BANK OF
                                       AMERICA AND WELLS FARGO BANK'S
14  SUSANNE MARIE MCGREW, an           MOTIONS TO DISMISS**
    individual; LAURIE HIRSCH, an
15  individual; PURHYDRO, LLC, a
    Nevada corporation; WELLS
16  FARGO BANK NATIONAL
    ASSOCIATION; BANK OF AMERICA,
17  NATIONAL ASSOCIATION;
    JPMORGAN CHASE BANK, National
18  ASSOCIATION; and DOES 1
    through 50, inclusive,
19
                Defendants.
20  _____
     And Related Actions.
21

22       On November 26, 2019, the Court granted Bank of America,

23  N.A. ("Bank of America" or "BofA") and Wells Fargo Bank's, N.A.

24  ("Wells Fargo") (collectively "the Banks") joint motion to

25  intervene, as they possessed the disputed funds at the heart of

26  this litigation.  See Order Granting Mot. to Intervene, ECF No.

27  36.  The Banks have since deposited the disputed funds with the

28  Court.  They now move to be discharged from the suit and to be

                                  1

1  reimbursed for the attorneys' fees and costs incurred by

2  interpleading the funds.  BofA's Mot., ECF No. 97; see also Wells

3  Fargo's Mot., ECF No. 96.  Plaintiff Andrew Furia ("Plaintiff")

4  and Defendant Laurie Hirsch ("Hirsch") oppose the motions only as

5  to reimbursement for attorney's fees.  See Plf's Opp'n, ECF No.

6  109; see also Hirsch's Opp'n, ECF No. 111.  For the reasons

7  stated below, the Court GRANTS the Banks' motions but DEFERS

8  assessment and allocation of the fees until all claims have been

9  resolved.[1]

10

11      I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

12      On March 25, 2019, Plaintiff deposited $340,000 into a Wells

13  Fargo checking account he jointly held with his then girlfriend,

14  Defendant Susanne Marie McGrew ("McGrew").  BofA Mot. at 3.  He

15  also executed a Relationship Change Application, giving McGrew

16  the ability to withdraw the money.  Plf's Opp'n at 7.

17      McGrew withdrew the entire balance of the joint account

18  ($324,918.27) while Plaintiff was away on April 8, 2019.  Id.

19  She deposited the funds into her own personal Wells Fargo account

20  and obtained two cashier's checks made payable to herself—one for

21  $300,000 and the other for $24,918.27.  Id.  Plaintiff discovered

22  the withdrawal the same day and immediately contacted Wells

23  Fargo.  Id.  After many conversations with the bank, Wells Fargo

24  informed Plaintiff that their hands were tied because he had

25  given McGrew authorization to withdraw the funds when he made the

26

27  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for June 16, 2020.

2

1  relationship change.  Id. at 6.

2      Plaintiff filed a complaint in the Superior Court of

3  California, County of El Dorado, against McGrew two days later,

4  seeking to recover the disputed funds.  BofA Mot. at 1.

5  Plaintiff was able to obtain a Temporary Restraining Order("TRO")

6  the next day to freeze McGrew's personal Wells Fargo account.

7  Id.  But the TRO was to no avail, since she had already deposited

8  the cashier's checks into her Bank of America account.  Id.  A

9  week later, the court issued a second TRO and ordered Wells Fargo

10  to turn over information about the disbursement of the contested

11  funds.  Id.  Based on that information, Plaintiff obtained a

12  third TRO to freeze all of McGrew's Bank of America accounts.

13  Plf's Opp'n at 10.  But Bank of America was only able to freeze

14  $2,364.69.  Id.

15      The court issued a fourth TRO, so Plaintiff could obtain

16  information from Bank of America regarding the disputed funds.

17  Id.  Plaintiff learned that McGrew had transferred at total of

18  $321,000 from her Bank of America accounts to her sister Hirsch's

19  accounts.  BofA Mot. at 2.  Hirsch then transferred $20,000 to

20  her Wells Fargo account, and purchased a cashier's check in the

21  amount of $300,936.94.  Id.  She then bought two more cashier

22  checks with these funds: (1) one payable to Defendant PurHydro,

23  LLC in the amount of $100,000, and (2) one payable to Little

24  Trouble LLC in the amount of $200,936.94.  Id.  Pursuant to the

25  fourth TRO, Bank of America placed holds on McGrew and Hirsch's

26  accounts and successfully stopped payment on the cashier's check

27  to Little Trouble LLC.  Id.  However, the cashier's check to

28  PurHydro, LLC was deposited at JP Morgan Chase before Bank of

1  America could stop payment.  Id.

2      On May 1, 2019, Plaintiff amended his complaint to join

3  Hirsch, PurHydro, LLC, and the Banks (including JP Morgan Chase)

4  as Defendants.  Notice of Removal, Ex. B, First Amended Verified

5  Complaint ("FAC"), ECF No. 1.  But Plaintiff did not assert any

6  causes of action against the Banks.  Id.  McGrew then removed the

7  case to this Court.  Notice of Removal ¶ 6.  Soon after,

8  Plaintiff dismissed the Banks as defendants.  Amended Notice of

9  Voluntary Dismissal, ECF No. 8.

10      Despite being dismissed, the Banks continuously urged

11  Plaintiff, Hirsch, and McGrew, to stipulate to the interpleading

12  of the funds with the Court.  BofA Mot. at 3.  The Banks'

13  requests were ignored and they were forced to move to intervene

14  for the purpose of interpleading the funds themselves.  Mot. to

15  Intervene, ECF No. 20.  The Court granted the motion.  Order, ECF

16  No. 36.  The Banks subsequently filed their Crossclaims and

17  Counterclaims for interpleader, ECF Nos. 38-40, and filed motions

18  to deposit the contested funds into the registry of the Court,

19  ECF Nos. 39-41.  The Court granted these motions as well, ECF No.

20  53, and the funds were ultimately deposited with the Court.

21

22              II.   OPINION

23      A.   Request for Judicial Notice

24      Plaintiff asks the Court to take judicial notice of the

25  Wyoming Secretary of State's Webpages related to the business

26  filings of Little Trouble LLC.  Req. for Judicial Notice

27  ("RJN"), ECF No. 110; see also Plf's Opp'n, Exh. K, ECF No. 109-

28  13.  Neither Hirsch nor the Banks oppose this request.

4

1    Under Federal Rule of Evidence 201, a district court may

2    take judicial notice of a fact that is "not subject to

3    reasonable dispute because it can be accurately and readily

4    determined from sources whose accuracy cannot reasonably be

5    questioned." Fed. R. Evid. 201(b)(2). Because these documents

6    "are not subject to reasonable dispute and their authenticity is

7    not in question," the Court will take judicial notice of them.

8    Trudeau v. Google LLC, 349 F. Supp. 3d 869, 876 (N.D. Cal.

9    2018). However, the Court can take notice of the existence of

10   these documents but not of the truths asserted in them. Id.

11        B.   Legal Standard

12        "An interpleader action typically involves two stages."

13   Mack v. Kuckenmeister, 619 F.3d 1010, 1023 (9th Cir.

14   2010)(citations omitted). First, the district court determines

15   whether the requirements for an interpleader action have been

16   met. Id. To make this determination the court looks to

17   whether there is a single fund at issue and adverse claimants to

18   that fund. Id. If the interpleader action is proper, the Court

19   then determines "the respective rights of the claimants." Id.

20   at 1023-24.

21        Once the interpleader action has been properly brought and

22   the funds have been deposited, "the court should readily

23   discharge a stakeholder absent bad faith or delay by the

24   stakeholder." Metropolitan Life Ins. Co v. Billini, No. CIV. S-

25   06-02918-WBS-KJM, 2007 WL 4209405, at *2 (E.D. Cal. Nov. 27,

26   2007). The court also has discretion "to award attorney fees to

27   a disinterested stakeholder in an interpleader action." Id. at

28   *3 (quoting Abex Corp. v. Ski's Enters., Inc., 748 F.2d 513, 516

5

1 | (9th Cir. 1984)).

2 |     C.    <u>Analysis</u>

3 |        1.   <u>Discharge</u>

4 |     The Banks seek to be discharged from this suit since they

5 | have "disclaimed any interest in the stake and ha[ve] deposited

6 | the contested funds with the Court." BofA Mot. at 4; Wells

7 | Fargo Mot. at 3. Plaintiff and Hirsch do not oppose. <u>See</u> Plf's

8 | Opp'n at 4; <u>see also</u> Hirsch's Opp'n at 3. Because the opposing

9 | parties concede and dismissal is proper, the Court GRANTS the

10 | Banks' request to be discharged from this action.

11 |        2.   <u>Attorneys' Fees</u>

12 |     The Banks seek a total of $42, 051.76 in combined legal

13 | fees. Reply at 1. Plaintiff and Hirsch oppose, arguing that

14 | intervention was not necessary and that the fees are

15 | unreasonable. <u>See</u> Hirsch Opp'n at 2; <u>See also</u> Plf's Opp'n at 4.

16 |         a.   <u>Proper and Necessary</u>

17 |     Plaintiff argues that "the Banks' improper addition of

18 | McGrew to Plaintiff's account and their delays in freezing or

19 | failure to claw back funds, prevents any award of fees." Plf's

20 | Opp'n at 15. Hirsch argues reimbursement of fees is improper

21 | because she planned to intervene, so it was unnecessary for the

22 | Banks to interplead the funds. Hirsch Opp'n at 2. The Court

23 | finds all these arguments to be unpersuasive.

24 |     First, Plaintiff's arguments fail because they are not

25 | grounded on any legal authority. He argues the "whole fiasco"

26 | could have been avoided if the Banks had simply advised him

27 | against granting McGrew with authorization to withdraw funds.

28 | Plf's Opp'n at 18. But he cites no authority to support his

1  contention that the Banks are to blame here. Instead, as the

2  Banks point out, that McGrew had the rightful authority to

3  withdraw the funds is "no one's fault but [Plaintiff's] own."

4  Reply at 5.  Plaintiff signed the relationship change

5  application, thereby acknowledging that he understood and agreed

6  to be bound by that agreement.  Id.  Under that agreement, it is

7  clear that a joint accountholder has the authority to "withdraw

8  and transfer funds, make payments, or close the account."  Id.

9  (citing Lee v. Yang, 111 Cal. App. 4th 481, 490-493 (2003)).

10      As for Plaintiff's second argument, Wells Fargo was not

11  able to initially claw back or freeze McGrew's account because

12  it was served with the first TRO days after the funds had

13  already been transferred to Bank of America.  Reply at 5.  Bank

14  of America was only able to claw back the $200,936.94 cashier's

15  check to Little Trouble, LLC, because the payment had not yet

16  made it to a different bank by the time the Fourth TRO was

17  issued.  BofA Mot. at 2.  Plaintiff also fails, once again, to

18  cite any authority in support of his argument that the Banks

19  were required to comply differently to the multiple TRO's than

20  they did

21      Hirsch's arguments are equally unpersuasive.  Hirsch first

22  argues that the Banks' intervention was unnecessary because she

23  planned to interplead the funds herself.  Hirsch' Opp'n at 5.

24  However, she did not file a request to amend her answer to

25  include interpleader claims until October 14, 2019—four months

26  after her initial answer and two weeks after the Banks had filed

27  their motion to intervene.  Reply at 6-7.  Moreover, Hirsch's

28  accounts did not contain the majority of the funds.  Id. at 7.

7

1  The $200,936.94 that she tried to send to Little Trouble were

2  held "in suspense" after Bank of America stopped the payment.

3  Id.  Lastly, Hirsch might not have been able to meet the

4  interpleader requirements.  Id.; see Lee v. W. Coast Life Ins.

5  Co., 688 F.3d 1004, 1012 (9th Cir. 2012)("[T]hose who have acted

6  in bad faith to create a controversy over the stake may not

7  claim the protection of interpleader.").

8      Accordingly, the Court finds the Banks are entitled to

9  reimbursement because their intervention was necessary and

10  proper under the circumstances.

11              b.   Reasonableness of Fees

12      The Court has discretion over "[t]he amount of fees to be

13  awarded in an interpleader action."  Trs. of Dirs. Guild of Am-

14  Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426 (9th

15  Cir. 2000).  Interpleader plaintiffs are entitled to attorneys'

16  fees since "the plaintiff benefits all parties 'by promoting

17  early litigation on the ownership of the fund, thus preventing

18  dissipation.'"  Id. (quoting Shirmer Stevedoring Co. Ltd. v.

19  Seabord Stevedoring Corp., 306 F.2d 188, 193 (9th Cir. 1962)).

20      Since the interpleader plaintiff is supposed to be

21  disinterested in the disposition of the funds, fees are limited

22  to those "incurred in filing the action and pursuing the plan's

23  release from liability."  Id.  Expenses that may be reimbursed

24  include: "preparing the complaint, obtaining service of process

25  on the claimants fund, and preparing an order discharging the

26  plaintiff from liability and dismissing it from the action."

27  Id. at 427.  Because the scope of fees is limited, attorneys'

28  fee awards are "typically modest."  Id.  Lastly, since the fees

8

1  are paid from the interpleader funds themselves, "there is an

2  important policy interest in seeing that the fee award does not

3  deplete the fund at the expense of the party who is ultimately

4  deemed entitled to it."   Id.

5      The Banks seek the following in attorneys' fees and costs:

6  (1) $20,769.08 for Wells Fargo and (2) $21,282.68 for Bank of

7  America.   Reply at 2.   Both Plaintiff and Hirsch argue that

8  these fees are unreasonable.   The Court disagrees.

9      First, Plaintiff and Hirsch argue the fee amount is

10  unreasonable because the filings for the Banks are "nearly

11  identical."   Hirsch Opp'n at 7; Plf's Opp'n at 192.   But as the

12  Banks' detailed billing entries show, each bank was only billed

13  for half of the time spent on any work applicable to both Banks.

14  Reply at 4.   In other words, the Banks split the bill 50-50.

15  The attorneys thus did not charge twice the amount in fees for

16  doing identical work, as Plaintiff and Hirsch attempt to argue.

17      Plaintiff also argues that "since [the Banks] are routinely

18  confronted with competing claims to funds held in joint

19  accounts," their award should reflect those "inevitable and

20  normal risks" they assume.   Plf's Opp'n at 17.   Plaintiff relies

21  on Fidelity Nat'l Co. v. U.S. Small Bus. Admin., which stated

22  that "courts have declined to award attorneys fees'" to

23  stakeholders that face multiple claims in their ordinary course

24  of business.   No. 2:13-cv-02030-KJM-AC, 2014 WL 6390275, at *3-4

25  (E.D. Cal. 2014).   But Fidelity concerns claims to insurance

26  proceeds—insurers regularly assume the risk of competing claims.

27  Unlike insurers, the Banks are not regularly in this business.

28  Reply at 4.   And even though the stakeholder in Fidelity did

1  assume such risk in its ordinary course of business, the court

2  nevertheless awarded attorneys' fees.  2014 WL 6390275 at *5.

3     Hirsch also argues that the Banks should not be compensated

4  for fees associated with their motion for intervention.  Hirsch

5  Opp'n at 6.  Hirsch argues these fees are not recoverable under

6  Tise.  But the list of compensable expenses in Tise is not

7  exhaustive.  Reply at 2.  The court in Tise did however

8  differentiate between fees "litigating the merits of the adverse

9  claimants' positions" and those fees incurred in "filing the

10  action and pursuing the plan's release from liability."  234

11  F.3d at 426.  Only the latter may properly be awarded.  And

12  here, the Banks motion for intervention falls within that

13  category.  Unlike the pension plan in Tise, the Banks did not

14  "oppose the [plaintiff's] entitlement to the funds . . . [and

15  did not] [] tak[e] sides."  Id. at 427.  Instead, the motion to

16  intervene was made so they could file their interpleader claims

17  and obtain a release from liability.

18     Lastly, Hirsch argues that the fees sought are unreasonable

19  because Wells Fargo is seeking $700 more than it interpleaded,

20  and the attorneys' fees combined compose 19% of the fees both

21  Banks deposited with the Court.  Hirsch Opp'n at 6-7.  She

22  contends being awarded such a high percentage of the funds is in

23  no way "modest" and therefore goes against the important policy

24  interest against depleting the fund.  Id.  The Banks argue that

25  while they recognize this important policy interest, the amount

26  of fees sought is proper here because this "has not been a

27  typical interpleader case."  Reply at 3.  Moreover, they argue

28  $42,051.76 (the total amount sought) will not significantly

1   deplete fund of $223,413.96, plus accrued interest.  Id.   The
2   Court agrees.

3        Courts consider a number of factors in determining the fair
4   award of attorneys' fees and costs: (1) the complexity of the
5   case; (2) unique services the stakeholder provided; (3) the
6   stakeholder's good faith and diligence ; (4) "whether the
7   services rendered benefited the stakeholder;" and (5) "whether
8   the claimants improperly protracted the proceedings."  Fidelity,
9   2014 WL 6390275, at *4.  All of these factors weigh in favor of
10  awarding the Banks the amount in fees requested.  The case was
11  complex—the Banks were required to respond to four TRO's, had to
12  freeze multiple accounts, were added to the suit and then
13  dismissed, and later had to move to intervene so they could
14  finally interplead the funds.  BofA Mot. at 9.  They also
15  provided unique services since they were the only parties that
16  actually possessed the funds.  Id.  Moreover, they acted in good
17  faith, and did not benefit from this lawsuit.  Id. at 8-9.

18       Most importantly, the Banks only seek to recover fees for
19  the costs directly related to their intervention and
20  interpleader.  Id. at 11.  In fact, the attorneys' fees the
21  Banks have incurred since the start of this litigation are much
22  higher than what they seek to recover.  Reply at 2.  And while
23  neither Plaintiff nor Hirsch dispute this, it is worth
24  mentioning that the hourly rates of the attorneys are
25  reasonable.  The supervising attorney in this case billed
26  between $388 and $400 an hour, and all other associates billed
27  between $265 to $315 an hour.  See Melamed Decl. in Support of
28  Banks' Mot's, ECF No. 98, ¶¶ 6-11.  As the Banks attorneys'

1    point out, these rates are in line with those charged for

2    attorneys of comparable experience within this Court's district.

3    See Smothers v. NorthStar Alarm Servs., LLC, 2:17-cv-00548-KJM-

4    KJN, 2020 WL 1532058, at *9-10(E.D. Cal. March 31, 2020)(finding

5    rates of $300 per hour for associates with fewer than three

6    years of experience, and between $495-$695 per hour for partners

7    with 11 to 30 years of experience to be reasonable).

8    Accordingly, the Court GRANTS the Banks' request to be awarded

9    attorneys' fees in the amount they requested.

10                       c.   Stay of Award

11        Plaintiff asks the Court to stay payment of the fees awarded

12   until all competing claims to the funds are resolved.  "Courts

13   occasionally defer assessment of attorneys' fees until resolution

14   of the claims."  Fidelity, 2014 WL 6390275, at *5.  The Court

15   "has discretion to assess fees from the interpleaded funds, as a

16   cost to the losing claimant, or divide them among the claimants."

17   Id.

18        The Banks argue this action is usually only taken under

19   exceptional circumstances.  Reply at 8.  But they concede that

20   the Court can award the Banks their fees and costs now, and then

21   charge the amounts to the responsible claimant when the claims

22   are finally resolved.  Id.  The Court finds this is the most

23   equitable course of action.  Accordingly, the Court DEFERS its

24   determination of the allocation of this award until resolution of

25   all claims against the funds.

26

27                      III.   ORDER

28        For the reasons set forth above, the Court GRANTS the Banks'

                              12

1  Motions to be discharged from this suit and to be awarded

2  attorneys' fees and costs in the amount of $20,769.08 to Wells

3  Fargo Bank and $21,282.68 to Bank of America.  The Court DEFERS

4  assessment and allocation of the fees and costs awarded until the

5  resolution of all claims.

6      IT IS SO ORDERED.

7  Dated: July 21, 2020

8

9  _____
   JOHN A. MENDEZ,
   UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28